UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REGNER FLORES,                                           :

                          Petitioner,          :          **OPINION**

              - v -                            :          18-cv-5946 (DC) (LB)

JAMIE LAMANNA, Superintendent of               :
Green Haven Correctional Facility,

                                               :

                          Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          REGNER FLORES
                      Petitioner *Pro Se*
                      DIN 15-A-1357
                      Green Haven Correctional Facility
                      P.O. Box 4000
                      594 Route 216
                      Stormville, NY 12582

                      MELINDA KATZ, Esq.
                      District Attorney, Queens County
                      By:    Johnnette Traill, Esq.
                             Assistant District Attorney
                      125-01 Queens Boulevard
                      Kew Gardens, NY 11415
                             Attorney for Respondent

CHIN, Circuit Judge:

On February 23, 2015, following a jury trial, petitioner Regner Flores was convicted in the Supreme Court of New York, Queens County (Aloise, *J.*), of one count of course of sexual conduct against a child in the first degree, N.Y. Penal Law § 130.75[1-A], and one count of endangering the welfare of a child, *id.* § 260.10[1].  Dkt. 44-3 at 122-23.  This was the second trial in the case, as the first trial had ended in a mistrial when the jury was unable to reach a unanimous verdict.  Dkt. 44-1 at 1-4.  The court sentenced Flores to concurrent terms of imprisonment of twenty years for the first count and one year for the second count.  Dkt. 44-4 at 15-16.  Flores was also sentenced to five years of post-release supervision.  *Id.* at 15.

The Appellate Division, Second Department affirmed his conviction, Dkt. 44-5 at 100-01; *People v. Flores*, 151 A.D.3d 740 (N.Y. App. Div. 2017) ("*Flores I*"), and the New York Court of Appeals denied his application for leave to appeal, Dkt. 44-5 at 112; *People v. Flores*, 86 N.E.3d 568 (N.Y. 2017) (Fahey, *J.*) ("*Flores II*").

By papers dated October 17, 2018, and received by this Court on October 22, 2018, Flores filed, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Dkt. 1.  In a corrected petition dated November 6, 2018, Flores contends that (1) the evidence of his guilt was legally insufficient, and the verdict was against the weight of the evidence; (2) trial counsel was ineffective; and (3) his sentence should be reduced as being excessive.  Dkt. 6.  Flores, however, requested a stay in the

2

proceedings on January 7, 2019, so that he could "return to the state courts to utilize and exhaust an available state remedy on . . . unexhausted constitutional claim[s]." Dkt. 8. Respondent did not oppose, and this Court granted the motion and stayed the case on February 11, 2019.

On January 7, 2021, proceeding *pro se* in state court, Flores filed a petition for a writ of error coram nobis on the ground of ineffective assistance of appellate counsel. Dkt. 44-5 at 114-30. The Appellate Division denied the petition, *id*. at 163; *People v. Flores*, 195 A.D.3d 638 (N.Y. App. Div. 2021) ("*Flores III*"), and the Court of Appeals (Singas, *J.*) denied Flores's application for leave to appeal, Dkt. 44-6 at 81; *People v. Flores*, 174 N.E.3d 349 (N.Y. 2021) ("*Flores IV*"). Flores filed a second petition for a writ of coram nobis on August 3, 2021, again *pro se* and again on the ground of ineffective assistance of appellate counsel. Dkt. 44-6 at 11. The Appellate Division denied that petition as well, *id.* at 105; *People v. Flores*, 204 A.D.3d 692 (N.Y. App. Div. 2022) ("*Flores V*"), and the Court of Appeals (DiFiore, *J.*) again denied leave to appeal, Dkt. 44-6 at 151; *People v. Flores*, 191 N.E.3d 398 (N.Y. 2022) ("*Flores VI*").

On March 13, 2023, Flores filed a motion in the Supreme Court, Queens County, to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 on the ground of ineffective assistance of trial counsel. Dkt. 44-6 at 152-75.[1] While that motion

---

[1]    Flores had previously sought, in a motion dated September 20, 2021, to vacate his judgment pursuant to § 440.10, but he eventually moved "to withdraw his motion so he could include additional

3

was pending, Flores's federal habeas case was reassigned to the undersigned.  After the New York Supreme Court (Zoll, *J.*) denied Flores's § 440.10 motion on June 9, 2023, Dkt. 44-7 at 52, Flores sought leave to appeal that decision, Dkt. 44-7 at 61-149.  In the interim, this Court ordered Flores to provide a copy of the Appellate Division's decision once issued and to submit supplemental papers thereafter if, in the event the Appellate Division denied leave to appeal, he wanted to continue pursuing his habeas petition.  Dkt. 12, 15.  The Appellate Division, Second Department (Chambers, *J.*) denied leave to appeal on September 6, 2023.  Dkt. 44-8 at 81.

On November 30, 2023, Flores moved to file an amended petition for a writ of habeas corpus in which he provided additional bases for relief on the grounds that his trial and appellate counsel were ineffective.  Dkt. 16 (the "Petition").  Respondent opposed Flores's motion to amend, *see* Dkt. 23, but this Court granted the motion to amend, reserved judgment "as to whether Petitioner's claims in the amended petition relate back to the claims in his original petition," and permitted Respondent "to assert any and all defenses [in opposition]," Dkt. 28.

For the reasons that follow, the Petition is DENIED.

---

claims." Dkt. 16 at 4.  On February 25, 2023, the trial court deemed the motion withdrawn.  *Id.*  For purposes of this petition, this Court refers only to the motion to vacate dated March 13, 2023.

## STATEMENT OF THE CASE

### I.      The Facts[2]

The evidence at trial established the following:

Flores sexually abused his girlfriend's ten-year-old son on four occasions

between March 2010 and November 2010.  The first three incidents occurred at the

victim's apartment in Woodside, Queens, where he lived with his mother between

March 2010 and August 2010.  The fourth occurred in a different apartment, also in

Queens, where the victim lived with his mother and grandmother.  The incidents were

revealed, and Flores was arrested, in 2012.

#### A.      The First Incident

The first incident occurred in the Woodside apartment during one

morning in March 2010.  The victim woke up as his mother was cooking breakfast in the

kitchen.  Dkt. 44-2 at 51.  Flores was inside the apartment's only bedroom, which was

visible from the kitchen but separated by the living room.  *Id.* at 51-53.  He called for the

victim and asked him to rub his stomach because "he had a stomachache." *Id*. at 51.

The victim began doing so, and Flores instructed him "to go lower and lower until [the

victim] touched the head of his penis," which was "facing upward" and sticking out of

---

2       The facts are primarily drawn from Respondent's brief submitted in opposition to Flores's direct
appeal in the Appellate Division in 2016.  *See* Dkt. 44-6 at 176-77; Dkt. 44-7 at 1-51.  The recitation of facts
set forth in the state appellate brief are supported by detailed citations to the record, including the
transcript of the trial and subsequent sentencing.

his clothes.  *Id.* at 51-52.  Flores said, "oops" and smiled.  *Id.* at 52.  The victim left and did not say anything to his mother because he did not know "it was a bad thing."  *Id.* at 52-53.  Due to the apartment's layout and the fact that the victim's mother was cooking, she did not see the incident.  *Id.* at 134; Dkt. 44-3 at 13-14, 22-23.[3]

> ### B.    *The Second Incident*

The second incident also occurred one morning in the Woodside apartment.  The victim's mother had left for work that day, leaving Flores and the victim alone in the apartment.  *Id.* at 55.  The victim was in the living room, playing video games, when Flores approached him and told him to "suck his dick."  *Id.*  The victim continued playing, but Flores sat down next to him and "put his two fingers on each side of [the victim's] cheek and forced [his] mouth open."  *Id.* at 56.  Flores pulled the victim's hair and forced the victim to perform oral sex until he ejaculated inside the victim's mouth.  *Id.* at 56-57.  The victim "ran to the restroom and spat it out."  *Id.* at 57. The victim did not tell anyone about what happened because he was afraid "[Flores] was going to like hurt somebody else or hurt [his] mom or hurt somebody."  *Id.* at 58.

---

[3]      On cross-examination, counsel for Flores questioned the victim about his recitation of this incident during the grand jury proceedings.  In his grand jury testimony, the victim stated that, after Flores made him touch his penis, "he told me to perform oral sex."  Dkt. 44-2 at 85 (reading from grand jury testimony).  But on cross-examination at Flores's second trial, it was revealed that the victim had lied to the grand jury, and that Flores had not asked him to perform oral sex that day.  *Id.* at 85-89.  When directly asked whether he lied to the grand jury, the victim answered "Yes."  *Id.* at 86.  And when asked why he lied, the victim testified that he saw that members of the grand jury "weren't grasping [his] story," and he was afraid they would not believe him.  *Id.* at 87-88.

C.      *The Third Incident*

The third incident occurred in the bathroom of the Woodside apartment. The victim, his mother, and Flores were about to go to the movies.  *Id.* at 58-59.  While his mother went outside to warm up the car, the victim was getting ready in the bathroom.  *Id.* at 59.  Flores then entered the bathroom and started to touch the victim's shoulders and buttocks.  *Id.*  Eventually, Flores ordered the victim to pull down his pants, inserted a finger inside his anus, and told him to "suck my pee-pee."  *Id.*  The victim "made like a face, like that [he] was in pain."  *Id.* at 60.  Flores "forced [the victim's] mouth open and started pulling on [his] hair," then made the victim perform oral sex.  *Id.* at 61.

Before going to the movies, the victim wiped his "butt" because "it stung," like "he had a cut."  *Id.* at 61.  Seeing blood, he asked Flores what to do, and Flores responded that the victim should tell his mother he had used the bathroom and wiped "too hard on toilet paper."  *Id.* at 61-62.  The three then went to the movies.  When they returned home, the victim went to the bathroom and showed his mother blood in his stool, stating that he had "wiped . . . too hard."  *Id.* at 62-63.  The victim's mother told her son that he might be constipated or that he had pushed too hard while going to the bathroom.  Dkt. 44-3 at 1.

D.       *The Fourth Incident*

The fourth incident took place on Thanksgiving in 2010 at the victim's grandmother's apartment, where the victim and mother had moved.  Dkt. 44-2 at 43; Dkt. 44-3 at 2-3, 26-27.  That night, the victim's grandmother was hosting Thanksgiving dinner, to which Flores was invited and attended.  *Id.* at 5.  While his mother and grandmother were cooking dinner in the kitchen, the victim was watching TV in the bedroom that he shared with his mother.  Dkt. 44-2 at 66.  Flores then entered the bedroom and laid on the bed next to him.  *Id.* at 66-67; *see also* Dkt. 44-3 at 5, 34.

Once on the bed, Flores "pulled out his penis" and "didn't say anything," but the victim "knew what to do" and started to perform oral sex on Flores.  Dkt. 44-2 at 67.  The victim began tearing up.  *Id.*  Flores then tried to unbutton the victim's pants, but the victim said, "no."  *Id.*  The victim, however, yielded when Flores promised him a phone for Christmas.  *Id.*  The victim then pulled down his unbuttoned pants and "sat on [Flores's] penis."  *Id.* at 68.  When the victim tried to get up, Flores held him down by his shoulder until he "ejaculated around [the victim's] anus."  *Id.*  The victim hid his screams "because it hurt."  *Id.* at 70.  He also testified that he did not say anything because he "didn't want [Flores] to get in any trouble and he "really wanted a phone."  *Id.*  A couple of days later, the victim shouted to his grandmother from the shower that he was bleeding from his butt.  Dkt. 44-3 at 28.  His grandmother suggested that he was

8

just constipated.  *Id.* at 29.  The grandmother did not tell her daughter about this interaction because "[it] didn't [l]ook like it was something major." *Id.*

### E.  Discovery of the Incidents

In 2011, the victim and his mother moved to Florida without Flores.  Dkt. 44-2 at 71; Dkt. 44-3 at 6.  One day in 2012, the victim's mother was babysitting a six-year-old boy named Joey.  While playing with Joey, the victim, now twelve years old, pulled down the boy's pants and inserted his finger into Joey's anus.  Dkt. 44-2 at 74. The victim had "learned" this behavior "from Regner [Flores]."  *Id.*

When confronted by his mother about the incident, the victim first denied touching Joey but eventually admitted that he had learned the behavior from Flores.  *Id.* at 75.  His mother "was in shock" and reported what she had learned to the authorities. *Id.*; Dkt. 44-3 at 9-10.  The victim was examined by a doctor in Florida, then flew to New York with his mother, where they met with police and detectives from the Queens Special Victims Child Abuse Squad at the Queens Child Advocacy Center, on December 27, 2012.  Dkt. 44-1 at 169-70; Dkt. 44-2 at 1.

### F.  The Investigation and Arrest

As the lead detective on the case, it was Detective Michelle Silveira's responsibility to gather evidence and investigate the case.  Dkt. 44-1 at 173.  In that role, she spoke with all parties and observed an interview of the victim on December 27, 2012.  *Id.* at 169; Dkt. 44-2 at 1.  The interview was conducted by an assistant district

attorney in a special room, while others, including Detective Silveira, observed through a two-way mirror.  Dkt. 44-1 at 169-70.  Flores was arrested the next day.  Dkt. 44-2 at 2.

Doctor Jamie Hoffman-Rosenfeld, a pediatrician and medical director of the Queens Child Advocacy Center, conducted a physical examination of the victim on January 3, 2013.  Dkt. 44-2 at 21-22.  During her initial interview with the victim, "[h]e didn't report current symptoms" and reported only "symptoms that he experienced in the past during the incidents of sex abuse that he described."  *Id.* at 22.  Specifically, the victim reported "experienc[ing] pain and some bleeding . . . from his butt."  *Id.* According to Dr. Hoffman-Rosenfeld, in cases where an allegation of sexual abuse has been made, a medical provider conducts "a complete examination from head to toe" using a special instrument to do a careful examination of a victim's private parts.  *Id.* at 23.  Dr. Hoffman-Rosenfeld conducted that examination and found the victim to be in good physical health, without any injuries in his anal region.  *Id.* at 24-25.  She explained, however, that even if there had been injuries in the past, the perianal and anal region can heal without any visible abnormality, and that the longer the time period between an incident of abuse and a medical exam, the less likely it is that any visible signs will be found.  *Id.* at 25.

II.     *The State Court Proceedings*

A.     *The Indictment and First Trial*

A 2013 Queens County indictment charged Flores with one count of course of sexual conduct against a child in the first degree in violation of N.Y. Penal Law § 130.75[1-A], and one count of endangering the welfare of a child in violation of N.Y. Penal Law § 260.10[1].  *See* Dkt. 44 at 8-9 ¶ 11.  According to the indictment, the charged crimes occurred "on or about March 1, 2010, and January 1, 2011 . . . over a period of time not less than three months in duration."  *Id.* (alteration in original) (quoting indictment).  Flores proceeded to trial by jury for those charges on June 23, 2014, but after the jury failed to reach a verdict as to the first count, the court (Aloise, *J.*) declared a mistrial on July 3, 2014.  Dkt. 44-1 at 1-4.

B.     *Second Trial*

Flores proceeded to a retrial for the same two counts on January 12, 2015.  Dkt. 44-1 at 5.  As with the first trial, Judge Aloise presided over the second trial, and Russell Rothberg represented Flores.  *Id.*  The jury heard testimony from Detective Silveria, *id.* at 165-73; Dkt. 44-2 at 1-6; Dr. Hoffman-Rosenfeld, *id.* at 11-32; the victim, *id.* at 33-119; the victim's mother, *id.* at 120-37; Dkt. 44-3 at 1-23; and the victim's grandmother, *id.* at 23-38.  Defense counsel cross-examined each of those witnesses.

The prosecution rested on January 14, 2015.  *Id.* at 38.  Flores did not testify, and the defense did not present a case.  *Id.* at 39-40.  After summations and one

day of deliberations, the jury reached a verdict on January 20, 2015, finding Flores guilty

on both counts. *Id.* at 122-23.

### C.     Sentencing

The trial court scheduled sentencing for February 23, 2015. Dkt. 44-4 at 5.

That hearing began with Flores's trial counsel moving to set aside the verdict as against

the weight of the evidence. *Id.* at 6. The trial court denied the motion, then heard from

the prosecution and counsel for Flores. *Id.* at 6-11. Flores himself then addressed the

court, and he not only maintained his innocence but also argued that "there were a lot

of lies on the case." *Id.* at 11-14. The court heard Flores's specific challenges to the

evidence presented against him but noted that those issues "were fully flushed out

before th[e] jury." *Id.* at 14. The court referred to the "beyond deviant, beyond

perverse" nature of the crimes and sentenced Flores to concurrent terms of

imprisonment of twenty years for the first count and one year for the second count. *Id.*

at 14-16. Flores was also sentenced to five years of post-release supervision. *Id.* at 15.

### D.     Direct Appeal

Flores appealed his conviction to the Appellate Division, Second

Department, asserting the following claims: (1) the verdict was against the weight of the

evidence, and the conviction was based upon legally insufficient evidence; (2) trial

counsel rendered ineffective assistance by failing to seek re-inspection of the grand jury

minutes after learning that the victim lied about one of the incidents; and (3) the

integrity of the grand jury was impaired due to perjury by the victim.  Dkt. 44-5 at 1.

The Appellate Division affirmed Flores's conviction on June 7, 2017.  *See*

Dkt 44-5 at 100-01; *Flores I*, 151 A.D.3d at 740-41.  Explaining that it must "accord great

deference to the jury's opportunity to view the witnesses, hear the testimony, and

observe demeanor," the court held that the evidence was legally sufficient to establish

Flores's guilt beyond a reasonable doubt.  *Id.* at 741  As to Flores's remaining challenges

regarding the integrity of the grand jury proceedings, the court held that it could not

review those challenges because they were "based upon matters dehors the record."  *Id.*

On August 31, 2017, the New York Court of Appeals denied Flores's

application for leave to appeal.  *See* Dkt. 44-5 at 112; *Flores II*, 86 N.E.3d at 568.

### E.    *The Initial Habeas Proceedings*

As noted above, Flores filed his original habeas petition in October 2018.

The habeas proceedings were stayed in February 2019 so that Flores could "return to the

state courts to utilize and exhaust an available state remedy on . . . unexhausted

constitutional claim[s]."  Dkt. 8 at 2.

### F.    *Petitions for Writ of Error Coram Nobis*

Proceeding *pro se* in state court, Flores filed a petition for a writ of error

coram nobis on January 7, 2021.  Dkt. 44-5 at 114-30.  Flores requested that his

conviction be vacated on the basis that his appellate counsel was ineffective because he

failed to raise three types of challenges on appeal.  Specifically, Flores contended that

appellate counsel failed to challenge trial counsel's performance as ineffective when he

failed to (1) call certain fact witnesses, *id.* at 119 ¶ 16; (2) call a medical expert, *id.* at 119-

20 ¶¶ 17-19; (3) object to the dismissal of certain jurors during jury selection, *id.* at 120-

22 ¶¶ 20-24; (4) seek dismissal of the indictment as containing duplicitous counts, *id.* at

123 ¶ 25; (5) seek dismissal of the counts charged as duplicitous and multiplicitous, *id.*

¶ 26; (6) challenge the trial court's deficient reasonable doubt instruction, *id.* at 124-25

¶ 29; and (7) challenge the trial court's incomplete readback of the victim's testimony to

the jury, *id.*  On June 2, 2021, the Appellate Division denied the petition, holding that

Flores "failed to establish that he was denied the effective assistance of appellate

counsel.  *Id.* at 163; *Flores III*, 195 A.D.3d at 638.  The Court of Appeals (Singas, *J.*) denied

leave to appeal.  Dkt. 44-6 at 81; *Flores IV*, 174 N.E.3d at 349.

Flores filed a second petition for a writ of coram nobis on August 3, 2021,

again *pro se* and again on the ground that his appellate counsel rendered deficient

representation by failing to raise certain challenges on appeal.  Dkt. 44-6 at 11-23.  Flores

re-raised his arguments from the first coram nobis petition, adding only that his

appellate counsel also failed to (1) challenge the victim's competency to testify, *id.* at 15-

17; and (2) seek state collateral review of Flores's conviction through a motion to vacate

under New York Criminal Procedure Law section 440.10, *id.* at 18-23.  The Appellate

Division denied Flores's second coram nobis petition on April 6, 2022, again holding

14

that Flores "failed to establish that he was denied the effective assistance of appellate

counsel."  *Id.* at 105; *Flores V*, 204 A.D.3d at 692.  The Court of Appeals (DiFiore, *J.*)

denied leave to appeal.  Dkt. 44-6 at 151; *Flores VI*, 191 N.E.3d at 398.

### G.    State Collateral Review

On March 13, 2023, Flores filed a motion to vacate his conviction pursuant

to N.Y. Crim. Proc. Law § 440.10 on the ground of ineffective assistance of trial counsel.

Dkt. 44-6 at 152-75.  Specifically, Flores contended that his trial counsel should have but

failed to (1) consult with or call to the stand a child psychologist or medical expert, *id.* at

163-69; and (2) move to dismiss the indictment because the integrity of the grand jury

was impaired by the victim's perjury, *id.* at 169-71.  In support of his motion, Flores

submitted an affidavit by Dr. Stuart Silverstein, who attested to having "managed

hundreds of cases of potential and confirmed child abuse during the course of [his]

career."  *Id.* at 173 ¶ 1.  Flores argued that the Silverstein declaration "sets forth key

investigative leads that any reasonable attorney, when faced with the facts at hand,

would have pursued" *id.* at 161 ¶ 29, including "reviewing the complainant's full

medical history," *id.* at 174 ¶ 4.

In opposition, the prosecution argued that Flores's trial counsel, Russell

Rothberg, "zealously represented defendant throughout the trial," and that the

infirmities alleged by Flores were not manifestations of ineffective assistance but were

intentional, strategic decisions that simply did not pan out at trial.  Dkt. 44-7 at 24-25.

15

The prosecution submitted an affirmation from Rothberg to support that argument. *Id.*

at 47. Rothberg affirmed, for example, that he decided not to "rely on or hire an expert"

because experienced prosecutors "could easily discredit child experts for the defense."

*Id.* at 49 ¶ 8. And although he did not explain why he did not move to dismiss the

indictment, Rothberg stated that he believed he had "a compelling case of innocence"

because "the police investigation was lackluster," "the People's expert had found no

physical evidence from the victim," and "there were serious[] credibility issues with the

victim." *Id.* at 49 ¶ 8, 50 ¶ 10. Accordingly, Rothberg attests that his "strategy during

these trials was to argue the facts of the case [him]self" and engage in vigorous cross-

examination of the witnesses. *Id.* at 49 ¶ 8. Indeed, Rothberg attests that he followed

that strategy during the second trial because that same strategy led to a mistrial in the

first trial. *Id.* at 50 ¶ 9.

On June 9, 2023, the New York Supreme Court (Zoll, *J.*) denied Flores's

§ 440.10 motion because "the evidence, the law, and the circumstances of this particular

case, viewed in totality and as of the time of the representation, support the conclusion

that trial counsel provided meaningful representation." Dkt. 44-7 at 52 at 59. That

denial was premised on three core holdings.

First, the court noted that a lawyer is not automatically deemed ineffective

simply because his or her strategy eventually proves to be unsuccessful. *Id.* at 58. The

court found that Rothberg made intentional, strategic decisions that reasonably

16

accounted for the nature of the case and the evidence at hand such that attacking the victim's credibility and declining to call a medical expert did not constitute ineffective representation but "[a] reasonable and legitimate" strategy. *Id.* Second, the court disagreed that Rothberg's failure to move to dismiss the indictment constituted deficient performance because even if the perjured testimony "were to be removed from consideration, the remaining evidence before the Grand Jury would nonetheless have established all the elements of [the crime]." *Id.* at 60. Finally, the court concluded that Flores's federal challenge to the adequacy of his representation necessarily failed because his state challenge failed, as "the New York standard regarding meaningful representation 'offers greater protection than the federal test.'" *Id.* at 60 (quoting *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).

Flores applied for leave to appeal the Supreme Court's decision, Dkt. 44-7 at 61-149, but the Appellate Division, Second Department (Chambers, *J.*) denied the application on September 6, 2023, Dkt. 44-8 at 81.

### III.    *The Petition*

In the Petition, Flores seeks habeas relief on the grounds raised in his original petition, Dkt. 6, as well as additional claims of ineffective assistance of counsel as laid out in his first coram nobis petition and his motion to vacate, Dkt. 16. Respondent opposed the Petition on May 29, 2024. Dkt. 41 (sealed); *see* Dkt. 44 (public-redacted version dated June 18, 2024). Flores filed a reply on August 26, 2024. Dkt. 51.

## *DISCUSSION*

### I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal

court may reverse a state court ruling only where it was 'so lacking in justification that

there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123,

126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v.

Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

### II.    *Analysis*

Flores contends that he is entitled to habeas relief because (1) the evidence

of his guilt was legally insufficient, and the verdict was against the weight of the

evidence; (2) his trial and appellate counsel were ineffective; and (3) his sentence is

18

excessive and should be reduced.  Dkt. 6; Dkt. 16.  The prosecution opposes each basis

for habeas relief and argues, additionally, that a subset of the ineffective assistance of

counsel claims raised by Flores in the Petition are barred because they are untimely and

do not relate back to the original petition.  Dkt. 44.  I address each claim in turn.

A.      *The Sufficiency of the Evidence Claim*

First, Flores argues that there was insufficient evidence at his second trial

to support his conviction and that the verdict was against the weight of the evidence.

Dkt. 6 at 5.  This claim fails.

Defendants in a criminal trial may be convicted only upon proof

establishing their guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307,

309 (1979).  When reviewing a claim that the evidence introduced at trial was

insufficient to sustain a defendant's conviction, the reviewing court applies the standard

set forth in *Jackson* to determine "whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citation omitted).  And

where a state court has considered the merits of a sufficiency claim on direct appeal, "a

federal habeas court simply reviews the specific reasons given by the state court and

defers to those reasons if they are reasonable."  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)

(stating that the Supreme Court has "affirmed this approach time and time again").

Accordingly, a "[p]etitioner bears a 'very heavy burden' in convincing a federal habeas

court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

Here, the Appellate Division considered the merits of Flores's sufficiency claim on direct appeal and concluded that there was sufficient evidence to support the conviction.  Dkt. 44-5 at 100-01; *Flores I*, 53 151 A.D.3d at 741.  In so finding, the court duly emphasized that it was required to "accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor," and to view the evidence in the light most favorable to the prosecution.  *Id.*  Because the Appellate Division disposed of Flores's sufficiency of the evidence claim on the merits, this Court must afford the state court's decision "substantial deference," *Fischer*, 780 F.3d at 560, and will only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of," *Harrington*, 562 U.S. at 98, the standard set forth in *Jackson*.

The Appellate Division's decision that the evidence was sufficient to support Flores's conviction was reasonable, and thus habeas relief is not available to Flores on his sufficiency claim.  Although Flores argued here and in state court that there "was no forensic evidence to corroborate the complainant's story," Dkt. 6 at 5, such evidence is not necessary to support a criminal conviction.  *See United States v. Hawkins*, 547 F.3d 66, 70-72 (2d Cir. 2008) ("[O]ur sufficiency of the evidence test must consider

the government's case in its totality rather than its parts, and may be satisfied by

circumstantial evidence alone.") (internal citation omitted and alteration adopted).

Moreover, the victim gave detailed testimony regarding four incidents of

sexual abuse that occurred during the relevant time period, and his mother and

grandmother gave supporting testimony that provided additional, albeit circumstantial,

proof.  *See generally* Dkt. 44-2 at 33-119 (victim's testimony); *id.* at 121-37 (victim's

mother's testimony); Dkt. 44-3 at 1-23 (same); *id.* at 23-38 (victim's grandmother's

testimony).  The prosecution also presented testimony from the detective who

conducted the investigation and from an expert in child abuse pediatrics who

conducted a physical examination of the victim.  *See generally* Dkt. 44-1 at 165-73

(Detective Silveria); Dkt. 44-2 at 1-6 (same); *id.* at 11-32 (Dr. Hoffman-Rosenfeld).  This

was more than sufficient evidence for the jury to conclude that Flores was guilty of the

crimes of which he was charged.

Indeed, the jury voted as it did despite defense counsel's vigorous cross-

examination of each of the prosecution's witnesses.  Crucially, and as Flores points out,

defense counsel attacked the victim's credibility on the stand and succeeded in getting

him to admit that he lied to the grand jury and embellished his testimony regarding one

of the four incidents because he was afraid that they would not believe his story

otherwise.  Dkt. 44-2 at 86-89.  But the jury was still entitled to convict Flores -- despite

the victim's admission and despite the lack of forensic evidence -- based on the evidence

21

of guilt.  This court must defer to the jury's assessments of both "the weight of the evidence [and] the credibility of witnesses."  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).

Accordingly, the Appellate Division's determination that the evidence was sufficient was reasonable, and Flores's sufficiency of the evidence claim provides no basis for federal habeas relief.

### B.    The Ineffective Assistance of Counsel Claim

Flores brings three sets of ineffective assistance of counsel claims.  First, Flores argues that his trial lawyer rendered ineffective assistance by failing to move to re-inspect the grand jury minutes after learning that the victim had lied about one of the incidents.  Dkt. 6 at 7.  Second, Flores contends that his trial lawyer also failed to (1) consult or call to the stand a psychological or medical expert, Dkt. 16 at 11-19; and (2) move to dismiss the indictment after learning that the victim had lied about one of the incidents, *id.* at 20-22.  Lastly, Flores claims that his appellate counsel rendered ineffective assistance by failing to challenge trial counsel's performance as ineffective on several enumerated bases.  *Id.* at 22-27.[4]

---

[4]     Specifically, Flores contends that his appellate lawyer should have challenged trial counsel's performance on appeal for failing to (1) call certain fact witnesses; (2) call a medical expert; (3) object to the dismissal of certain jurors during jury selection; (4) seek dismissal of the indictment as containing duplicitous counts; (5) seek dismissal of the counts charged as duplicitous and multiplicitous; (6) challenge the trial court's deficient reasonable doubt instruction; and (7) challenge the trial court's incomplete readback of the victim's testimony to the jury.

All the challenges to trial and appellate counsel's performance are meritless, and habeas relief is thus unavailable, for the reasons stated below.

### 1.   *Relation Back*

Because the Petition was filed after the one-year statute of limitations for habeas petitions had run, *see* 28 U.S.C. § 2244(d)(1)(A), his additional claims of ineffective assistance of counsel are timely only if they "relate back" to the claims in his original petition, *see* Fed. R. Civ. P. 15(c).  Under this rule, "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000) (quoting Fed. R. Civ. P. 15(c)).  Claims set forth for the first time in an amended habeas petition will not relate back if "the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Mayle v. Felix*, 545 U.S. 644, 657 (2005) (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

The claims added to the Petition by Flores's motion to amend are time-barred because they "depend upon events separate in 'both time and type' from the originally raised episodes" and may not relate back to the original petition.  *Id.*  As an initial matter, Flores's original petition simply did not include any claims of ineffective assistance of appellate counsel.  That petition only set forth a single claim of ineffective assistance of *trial* counsel, and so such a claim against appellate counsel necessarily

23

depends upon events separate in both time and type -- i.e., a different proceeding and a different attorney -- from those laid out in the original petition.  Accordingly, Flores's ineffective assistance of counsel claims based on his appellate counsel's performance do not relate back and are time-barred.  *See, e.g.*, *Hiers v. Bradt*, No. 11-CV-0270 (ERK), 2014 WL 6804252, at *7 (E.D.N.Y. Dec. 3, 2014) (claim of ineffective assistance of appellate counsel does not relate back to and is "wholly divorced from the claims . . . asserted in [the] original petition, none of which address appellate counsel).

This leaves the Court to consider whether two remaining bases for the claim of ineffective assistance of trial counsel -- (1) failure to consult or call to the stand a psychological or medical expert and (2) failure to move to dismiss the indictment after learning that the victim had lied about one of the incidents -- relate back to Flores's original petition.  Although the prosecution fairly argues that these claims also do not relate back to the original petition because they involve different *types* of alleged attorney malfeasance not alleged in the original petition, this decision presents a closer call because these two claims of ineffective assistance and the claim in Flores's original petition are all generally premised on trial counsel's failures.  *But see Jenkins v. Graham*, No. 06 Civ. 10200 (CM) (JCF), 2009 WL 1119383, at *3 (S.D.N.Y. Apr. 23, 2009) (declining to relate back where "petitioner's amendment would raise an entirely different claim of ineffective appellate counsel").  Nevertheless, even assuming, arguendo, that these two claims relate back to the original petition, as discussed below, they fail on the merits.

24

2.    *The Underlying Claims*

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness" and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 669, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases).  Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Showing that the state court's determination was objectively unreasonable is particularly difficult here because the standard for establishing an ineffective assistance of counsel claim under New York law is lower than under federal law.  *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017).  In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*,

25

125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, the state standard does not require the defendant to demonstrate that he or she was prejudiced by the ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.

   Flores has failed to meet his burden of proving that trial counsel was ineffective because his claims are based on trial counsel's strategic choices that are "virtually unchallengeable" before this Court.  *Strickland*, 466 U.S. at 690.  For example, Flores contends that his trial counsel failed to seek re-inspection of the grand jury minutes and to otherwise move to dismiss the grand jury indictment after learning that the victim lied about one of the incidents.  But as made clear in trial counsel's affirmation, both were strategic decisions made based on his understanding of the law and the facts in Flores's case.  Under New York law, "[i]ndictments are presumed to be valid."  *People v. Pelchat*, 464 N.E.2d 447, 452 (N.Y. 1984).  Unless an indictment is "based entirely on false testimony," it will stand if it is " supported by ample competent evidence."  *People v. Crowder*, 44 A.D.3d 330, 330 (N.Y. App. Div. 2007).  Given the indictment's presumed validity, trial counsel made a strategic decision to emphasize the lack of forensic evidence and to undermine the victim's credibility through cross-examination rather than challenge the underlying indictment.  *See* Dkt. 44-7 at 49 ¶ 8.  This was a reasonable strategic decision, especially given that this strategy resulted in trial counsel securing a mistrial during Flores's first trial.  *See id.* at 50 ¶¶ 9-10.  Even if

that same strategy did not pan out during Flores's second trial, the strategic decision to pursue it is reasonable and "virtually unchallengeable" before this Court.

Flores's ineffective assistance claim based on trial counsel's decision not to call an expert to the stand also fails for similar reasons. As trial counsel affirmed, he decided not to call a medical expert because "the victim had no physical signs of abuse," and he decided not to call a child psychologist because "the fact that the victim had abused someone himself [could] hurt Mr. Flores'[s] case." *Id.* at 49 ¶ 8. Due to those challenges, trial counsel concluded that he "would have a better chance at winning at trial through skillful cross-examination of the witnesses" than by risking Flores's case with potentially harmful testimony by new experts. *Id.* Accordingly, trial counsel's decision not to call experts is also a reasonable strategic decision that is virtually unchallengeable before this Court.

Thus, Flores failed to show that his trial counsel's performance fell below an objective standard of reasonableness, and he has failed to show that the state court's determination to that effect was objectively unreasonable. Moreover, to the extent Flores must show prejudice under federal law, he has failed to do so. Accordingly, Flores's claims of ineffective assistance are denied.

### C.   The Sentencing Claim

Last is Flores's claim that his sentence was excessive, which the Appellate Division considered on the merits and rejected. *Flores I*, 151 A.D.3d at 741 ("The

sentence imposed was not excessive.").  Generally, a federal court is "powerless" to "review a sentence handed down by a state court," *Fielding v. LeFevre*, 548 F.2d 1102, 1108 (2d Cir. 1977), especially because "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law," *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

Flores's sentencing claim fails because he was sentenced within the range prescribed by state law.  At the conclusion of his second trial, Flores was convicted of one count of course of sexual conduct against a child in the first degree, N.Y. Penal Law § 130.75[1-A], and one count of endangering the welfare of a child, *id.* § 260.10[1].  Dkt. 44-3 at 122-23.  Under New York law, Flores faced a determinate term of imprisonment between five and twenty-five years and up to five years of post-release supervision for the first count.  N.Y. Penal Law §§ 70.00, 70.02(1)(a), 70.45(2)(f).  The court sentenced Flores to a determinate term of imprisonment of twenty years and five years of post-release supervision for that count.  Dkt. 44-4 at 15.  For the second count, Flores faced a one-year definite term of imprisonment.  N.Y. Penal Law §§ 70.15(1), 70.25(1).  And the court sentenced Flores to a determinate term of imprisonment of one year for that count, to run concurrently with his sentence for the first count.  Dkt. 44-4 at 16.  Accordingly, Flores's sentence for both counts was within the range permitted by New York law.

28

Moreover, the sentence was not unreasonable in light of the seriousness of the crimes. The jury found that Flores had sexually abused a ten-year old boy on multiple occasions. As the trial judge described the conduct at sentencing, it was "beyond deviant, beyond perverse." *Id.* at 14. Flores's sentencing claim fails.

## CONCLUSION

Flores has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Flores has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of Court is respectfully directed to mail a copy of this opinion and the judgment to Flores at his last address of record.

SO ORDERED.

Dated:      New York, New York
            September 30, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation